**William Franklin McSWAIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41115.**

Court of Criminal Appeals of Texas.

March 13, 1968.

———◆———

Blanchard, Clifford, Gilkerson & Smith, Lubbock, on appeal only, for appellant.

Alton R. Griffin, Dist. Atty., Tom M. Richards and K. Anthony Wright, Asst. Dist. Attys., Lubbock, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is burglary; the punishment, 12 years.

The sufficiency of the evidence is strenuously challenged.

A console television-record player was stolen from a home under the control of Bob Haynie on the day in question. When Haynie returned from work he discovered that the house had been burglarized and reported the same to the police, but the appliance was never recovered. The appliance was mounted on legs, and the investigating officer found prints that "looked like four legs sitting down" near the rear gate leading into the alley at the rear of Haynie's house. Later in the day on the used car lot at Modern Chevrolet Company in the same city, the officer inspected a "white van" bearing lettering "Hill Top Bar-B-Q" and found four scratch marks in the cargo part of the pickup size van.

Mrs. Rudd, a neighbor of Haynie, testified that on the day in question between 1:00 and 2:00 p. m. she saw a van bearing lettering "Hill Top Bar-B-Q" stop in the alley at Haynie's back gate and saw two men, one being taller than the other, get out and go in the Haynie house. A short while later she heard a motor crank up and when she looked at the Haynie house she noticed that "the gate was left open". She stated that both men were strangers, and she did not attempt to identify appellant as being one of them.

Mrs. Ellsworth, another of Haynie's neighbors, testified that between 1:00 and 2:00 p. m. on the same day she saw a "white panel truck" bearing lettering "Hill Top Bar-B-Q" drive down the alley and stop at Haynie's back gate. She did not observe who was in the truck.

The witness Hill, co-owner of Hill Top Bar-B-Q located in the city in question, testified that at 10:00 a. m. on the day in question he traded the only van he owned which had "Hill Top Bar-B-Q" painted on it to Modern Chevrolet Company of the same city.

The witness Thompson, a truck salesman for Modern Chevrolet Company testified that the company got the "Hill Top Bar-B-Q Corvan in trade at approximately 10:00 a. m. on the day in question and that in the neighborhood of 2:00 p. m. on the day in question appellant, whom he knew years ago in another city, accompanied by a taller man, whom he later learned was appellant's son, approached him on the used car lot and demonstrated interest in buying the "Hill Top Bar-B-Q" vehicle and asked to try it out. Since there were only two seats in the van, he did not accompany appellant and his companion when they took the van for a test drive. He stated that he became alarmed because they had not returned at 3:00 p. m., when he looked at his watch and remarked, "They have been gone quite a while." He stated that after an interval of one hour and forty-five minutes, appellant and his companion finally returned the vehicle and said they were in a big hurry and did not have time to talk about purchasing the same. He stated that he had not seen them again until the trial.

There was much testimony and speculation as to whether or not the van was large enough to carry the stolen appliance, but essentially the above is the State's case.

Reliance is had by appellant upon a number of cases. In Alexander v. State, 164 Tex.Cr.R. 663, 302 S.W.2d 414, there was no positive identification of the accused and no identification of the automobile except as to year and make. In Scott v. State, 168 Tex.Cr.R. 94, 323 S.W.2d 445, the witness identified two of a trio of men and had an equal opportunity to identify the third, but declined to say that appellant was one of the three. In Stone v. State, Tex.Cr. App., 396 S.W.2d 882, which is discussed in appellant's brief, the State was able to prove only that Stone was walking with a screwdriver in his pocket in the neighborhood of a store which bore marks made by what appeared to have been a screwdriver and a tire tool. No tire tool was found.

■ In the case at bar we have positive identification as to the vehicle, as well as proof that the only vehicle bearing the same lettering as seen by the two women at the scene of the burglary was in appellant's possession at the time they saw the vehicle. We find the evidence sufficient to support the conviction.

■ Appellant's second ground of error relates to the cross examination of Officer Johnson, who was called by appellant and the following testimony elicited:

"Q. Have you had occasion today to check the records of the Sheriff's Department in relation to William Franklin McSwain and Emmett Franklin McSwain?

A. Yes, sir, I have.

Q. What did the record indicate to be the height of William Franklin Mc-Swain?

A. William Franklin?

Q. Yes, sir.

A. We had eight cards and all eight of them showed five-eleven on William Franklin McSwain.

Q. What do your records show to be the height of Emmett McSwain?

A. We had four cards on Emmett Mc-Swain and two cards show six-two and two cards show six-one."

On cross examination the State was permitted, over appellant's objection, to give the dates on which appellant had been measured as reflected by the cards. The careful trial court prevented the prosecutor from going further.

Reliance is had on Music v. State, 135 Tex.Cr.R. 522, 121 S.W.2d 606. In that case the unresponsive answer of the officer witness was, "I have seen them around that house together *and a number of other thieves.*" In reversing Judge Hawkins stated that the unresponsive answer strongly supported the fact the State was trying to prove. It is apparent from the opinion that the officer was a State's witness at the time he gave the answer. We are confronted here with a different situation. The officer was called by appellant, and no objection was made to the unresponsive answer, as stated above. On cross examination nothing was permitted, save the dates on which the measurements were made and the fact that Emmett McSwain was taller than appellant.

In Welhausen v. State, 30 Tex.App. 623, 18 S.W. 300, details as to extraneous offenses were proven, and this Court correctly held that an instruction to disregard would not remove the error. It is again pointed out that no request for an instruction to disregard the answer was made in the case at bar, and the witness was released to the State for cross examination.

Sharp v. State, Tex.Cr.App., 217 S.W.2d 1017, also relied upon by appellant, was reversed because testimony was volunteered as to an oral statement and as to silence when being accused while Sharp was under

arrest. Such is not the question before us here. A similar fact situation as in Sharp v. State, supra, was presented in Richardson v. State, Tex.Cr.App., 379 S.W.2d 913. In both cases the witness who volunteered was called by the State.

The facts in Hall v. State, 141 Tex.Cr.R. 607, 150 S.W.2d 404, cited by the State more nearly resemble those before us here, and clearly demonstrate that reversible error is not reflected by appellant's second ground of error.

No reversible error appearing, the judgment is affirmed.